IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MATTHEW JOEL WEAVER,

     Plaintiff,

v.                                  Case No. 2:13-cv-2408-JTM

PERFORMANT RECOVERY, INC.,

     Defendant.


### MEMORANDUM AND ORDER

Plaintiff Matthew Joel Weaver ("plaintiff") sought monetary damages against defendant Performant Recovery, Inc. ("defendant") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq*.   On April 2, 2014, the parties reached a confidential settlement during mediation.  Dkt. 28, at 2.  As part of the settlement, the parties agreed to have the court determine reasonable attorney's fees.  Dkt. 28, at 3.  This matter is therefore before the court on plaintiff's Motion for an Award of Costs and Attorney Fees (Dkt. 27).

### I.     Factual and Procedural Background

In his Complaint, plaintiff alleged that, beginning on February 21, 2013, defendant's agents and/or employees began contacting him regarding an alleged debt.  Plaintiff notified defendant of his ongoing bankruptcy but claimed that defendant continued to pursue the outstanding debt.  According to plaintiff, on March 5, 2013, one of defendant's agents "insisted that plaintiff make a payment, threatened to 'destroy' plaintiff's credit and stated she would continue to call plaintiff despite being advised of the bankruptcy automatic stay."  Dkt. 1-1, ¶ 10.

Plaintiff retained attorney A. Scott Waddell ("Waddell") on or about April 11, 2013.  On that same day, plaintiff sent defendant a *Nelson v. Miller* letter which included an offer to settle for $5,900.  On May 10, 2013, in response to plaintiff's demand, defendant denied any liability but made a settlement offer in the amount of "$1,000.00 in an effort to avoid the time and expense of litigation."  Dkt. 28, at 2.  Plaintiff rejected the offer.

On July 7, 2013, plaintiff filed a Petition for Damages for defendant's alleged violations of the FDCPA and KCPA in the Johnson County, Kansas District Court (Dkt. 1-1).  On August 9, 2013, defendant removed this matter to the United States District Court for the District of Kansas (Dkt. 1).  On that same date, defendant answered plaintiff's Petition, denying any and all liability and requesting an award of attorney's fees (Dkt. 3).  On April 2, 2014, this matter was successfully mediated, resulting in a confidential settlement.  Dkt. 28, at 2-3.  As part of the settlement, the parties agreed to have this court determine reasonable attorney's fees.  Dkt. 28, at 3.

## II.    Legal Standard

The FDCPA allows for attorney's fees for successful litigants.  The Act provides, in relevant part:

> Except as otherwise provided in this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . .
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court . . . .

15 U.S.C. § 1692k.

Likewise, the KCPA provides for reasonable attorney's fees following a settlement.  The Act specifically provides:

(e) Except for services performed by the office of the attorney general or the office of a county or district attorney, the court may award to the prevailing party reasonable attorney fees, including those on appeal, limited to the work reasonably performed if:

(1) The consumer complaining of the act or practice that violates this act has brought or maintained an action the consumer knew to be groundless and the prevailing party is the supplier; or a supplier has committed an act or practice that violates this act and the prevailing party is the consumer; and

(2) an action under this section has been terminated by a judgment, or settled.

K.S.A. § 50-634(e)(1)-(2).

## III.    Legal Analysis

Plaintiff requests an award of fees in the amount of $20,737.46, which represents $20,432.50 for 75.20 hours of work and $304.96 for costs and fees associated with the litigation. Dkts. 36, 36-1.   Defendant contests the amount of this award given the limited amount of work done and the early settlement and requests that the court award plaintiff and/or his counsel no more than $2,500.  Dkt. 29.  Specifically, defendant argues that the claimed fees and costs are unreasonable and unsustainable due to: (1) unnecessary billings; (2) excessive and duplicative billings; and (3) billings for administrative, paralegal, and associate tasks.   Dkt. 29, at 2. Defendant also disputes the hourly rate.  Dkt. 29, at 2.

As a threshold matter, defendant argues that the fee request does not comply with either the Federal Rules of Civil Procedure or the Kansas Local Rules and should fail altogether on this basis alone.  The court therefore deals with this threshold matter at the outset.

## A.    Failure to Comply with Federal Rules of Civil Procedure and Kansas Local Rules

According to defendant, both the Federal Rules of Civil Procedure and the Kansas Local Rules prevent a court from considering a motion to award attorney's fees until *after* the moving party has advised the court that the parties were unable to reach an agreement with regard to the

award.  Dkt. 29, at 4.  Defendant alleges that attorney Waddell first emailed defense counsel regarding the issue of attorney's fees on April 24, 2014, at 12:09 pm.  Dkt. 31, at 75.  That same day, allegedly without waiting for a reply from defendant, Waddell filed the instant fee request. Defendant argues that Waddell's failure to abide by the applicable rules, on its own, precludes his fee claim.  Dkt. 29, at 4.  The court disagrees.

Federal Rule of Civil Procedure 54 sets forth the requirements for seeking fees and costs. With regard to attorney's fees, the rule states as follows:

(d) Costs; Attorney's Fees

(2) Attorney's Fees . . .

(A) A claim for attorney's fees and related nontaxable expenses must be made by motion . . . .

(B) Unless a statute or court order provides otherwise, the motion must:

    (1) be filed no later than 14 days after the entry of judgment;
    (2) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
    (3) state the amount sought or provide a fair estimate of it; and
    (4) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

FED. R. CIV. P. 54(d)(2).  It is clear from a plain reading of the text that Rule 54 by itself does not require the moving party to initiate any kind of consultation with the other party, either before it files a motion for fees or otherwise.

However, Rule 54 works in conjunction with Kansas Local Rule 54.2, which states, in relevant part:

(a) A party who moves for statutory attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) must promptly initiate consultation with the other party or parties.

(b) If the parties reach agreement, they must file an appropriate stipulation and request for an order.

(c) If they are unable to agree, the moving party must file the following within 30 days of filing the motion:

> (1) a statement that, after consultation in accordance with this rule, the parties have been unable to reach an agreement with regard to the fee award; and

> (2) a memorandum setting forth the factual basis for each criterion that the court is asked to consider in making an award.

(d) The statement of consultation must set forth the date of the consultation, the names of those who participated, and the specific results achieved. The court will not consider a motion for statutory attorney's fees made pursuant to Fed. R. Civ. P. 54(d)(2) until the moving party files the statement of consultation in compliance with this rule.

(e) The memorandum . . . must be supported by time records, affidavits, or other evidence . . . .

D. KAN. R. 54.2. While the local rule does, in fact, require the moving party to consult with all other parties on the issue of attorney's fees, it does *not* require that this consultation be done *before* the motion for fees is made. Rather, it simply requires that the moving party *promptly* initiate consultation with the other parties. D. KAN. R. 54.2(a).

Here, Waddell claims that he sent defendant's counsel, namely Michael Klutho ("Klutho") and Pamela Welch ("Welch"), detailed time sheets before filing his motion for fees. Dkt. 36, at 2. He also requested, via email on April 24, 2014 (notably the same day that plaintiff filed his fees motion), that Klutho and Welch advise him of when they would be able to discuss his request for fees. Dkt. 31, at 75. Attached to that email was a second copy of Waddell's detailed time sheets. Dkt. 31, at 76-90. Waddell claims that he never received a response to this email from either Klutho or Welch. Dkt. 36, at 2. Waddell claims that, on May 13, 2014, he called and spoke with Klutho and Welch separately in an attempt to reach an agreement with respect to a fee award. Dkt. 33, at 1. The parties could not agree on an award. Dkt. 33, at 1.

5

Therefore, on May 14, 2014, Waddell filed his Statement of Consultation (Dkt. 32).  Two days later, on May 16, 2014, Waddell filed an Amended Statement of Consultation (Dkt. 33) in which he detailed the following: (1) his attempts to reach an agreement with regard to an award with Klutho and Welch, and (2) that no agreement could be reached.  The court finds that Waddell's actions and Amended Statement of Consultation satisfy the requirements of Kansas Local Rule 54.2(a), (c)(1), (d).[1]

## B.      Calculating the Lodestar Amount

In the alternative, defendant argues that Waddell's billings are neither justified nor reasonable under applicable law.   Specifically, defendant argues that Waddell's fee is unreasonable because: (1) the hourly rate is unreasonable for this type of claim; (2) this matter was settled during an early mediation without any motion practice or extensive discovery; and (3) the billing records demonstrate improper billing practices in that they include duplicative entries and charges for time not expended, non-billable tasks, and administrative clerical work. Dkt. 29, at 8.

A determination of a reasonable attorney's fees award begins with calculating the "lodestar," that is, "the reasonable number of hours spent on litigation multiplied by a reasonable hourly rate."  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (internal citations omitted).  The party seeking an award of fees has the burden of proving both the number of hours spent and the reasonableness of those hours.  *Id.*  Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  The court may adjust the lodestar, if

---

[1] The court is aware that Waddell was also required to file a memorandum setting forth the factual basis for the award, supported by time sheets, affidavits, or other evidence.  D. KAN. R. 54.2(c)(2), (e).  Defendant does not contest that Waddell has satisfied this requirement.

necessary, to account for the factors set forth in the Kansas Rules of Professional Responsibility.

*Davis v. Miller*, 269 Kan. 732, 7 P.3d 1223, 1236 (Kan. 2000); *see also Sheldon v. Vermonty*,

237 F. Supp. 2d 1270, 1274 (D. Kan. 2003).  These factors include:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) Whether the fee is fixed or contingent.

KANSAS RULES OF PROF'L RESPONSIBILITY, 1.5(a); *see also* Kan. S. Ct. R. 226 (2009), *Wittig v.*

*Westar Energy, Inc.*, 44 Kan. App. 2d 182, 235 P.3d 515, 529-30 (Kan. Ct. App. 2010), *Johnson*

*v. Westhoff Sand Co.*, 281 Kan. 930, 135 P.3d 1127, 1135-36 (Kan. 2006).

### 1.    Number of Hours Reasonably Expended

The court must first determine the amount of hours reasonably expended by counsel in

plaintiff's case.  In order for the moving party to satisfy its burden at this step, it "must submit

'meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are

sought, all hours for which compensation is requested and how those hours were allotted to

specific tasks.'"  *United Phosphorus,* 205 F.3d at 1233 (quoting *Case v. Unified Sch. Dist. No.*

*233, Johnson County, Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998)).  "[T]he overriding

consideration . . . [is] whether the attorney's hours were 'necessary' under the circumstances."

*Robinson*, 160 F.3d at 1281.  This requires the court to determine "what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances."  *Id*.  "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Id*. at 1280.  The court "is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."  *Id*. (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)).

Here, Waddell claims to have spent 75.20 hours on plaintiff's case, including time spent on the present motion.  Dkt. 36-1, at 27-41.  Defendant contests this calculation, alleging that Waddell's proffered hours contain time spent on excessive, duplicative, non-billable, inadequately documented, and clerical tasks.  Dkt. 29, at 9.

There is no doubt that Waddell's time sheets are thorough.  They total fifteen pages for a case that settled in mediation absent any motion practice or significant discovery.  Dkt. 36-1, at 27-41.  But that, in and of itself, gives this court pause.  Neither party has alleged that this case involved particularly complex or unusual matters.  This is true despite the fact that Waddell claims that "litigating with Mr. Klutho is contentious and expensive."  Dkt. 36, at 5.  Nor does Waddell allege that his acceptance of this case was to the detriment of his other cases or precluded him from taking other cases.  In fact, by his own admission, Waddell is well-versed in this area of the law, having "been involved in hundreds of consumer protection cases over the previous five years alone."  Dkt. 28-1, at 21.

Plaintiff himself acknowledges that this case involved no motion practice and only basic, preliminary discovery.  Indeed, there was only one deposition, plaintiff's, which lasted approximately 2.2 hours.  Dkt. 29, at 3.  The mediation and ultimate settlement of this case only

took 1.7 hours.   Dkt. 29, at 3.   Moreover, there is evidence that plaintiff's pleadings are comprised mostly of boilerplate language.

The court cannot therefore help but question whether Waddell's reported 75.20 hours were reasonable. Indeed, upon careful, scrutinized review, the court finds that counsel's time sheets contain multiple entries for clerical and paralegal work and non-billable hours.  There are also numerous instances of excessive hours.

### a.    Clerical Work

Defendant argues that Waddell's time sheets contain multiple entries for "non-billable administrative and clerical tasks," at a rate of $275 per hour, which it argues should be excluded entirely.  Dkt. 29, at 14.  There is no doubt that *paralegal* fees are compensable.  However, "[p]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  *Univ. of Kan. v. Sinks*, 2009 U.S. Dist. LEXIS 89783, at *26 (D. Kan. Sept. 28, 2009) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)).  It therefore stands to reason, then, that "purely clerical or secretarial tasks" should also not be billed at an attorney rate, either, regardless of who performs them.  The court therefore determines that "[t]asks that amount to filing, organizing files, making copies, printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage" must be deducted as purely clerical work that is not compensable.  *Sinks*, 2009 U.S. Dist. LEXIS 89783, at *26-27; *see also Bell v. Turner Rec. Comm'n*, 2010 U.S. Dist. LEXIS 1547, at *15 (D. Kan. Jan. 8, 2010) (deducting time attorney spent on "purely clerical or secretarial tasks," such as "ordering and paying for copies; communication with court reporters; obtaining and preparing summonses; and communication with process servers.").

After a thorough review of Waddell's time sheets, the court identifies 2.9 hours as "purely clerical or secretarial tasks."  These hours are non-compensable and will therefore be deducted from the total.

### b.    Paralegal Hours

Waddell's records also indicate a substantial amount of time spent on duties typically performed by a paralegal.  The United States Supreme Court has determined that

> paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate.  Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.

*Jenkins by Agyei*, 491 U.S. at 288 n.10; *see also Erickson v. City of Topeka*, 239 F. Supp. 2d 1202, 1208 (D. Kan. 2002).

Here, the court identifies 12.4 hours that should have been billed at a lower paralegal rate. These hours involve drafting correspondence, doing research, and completing pleadings. In a similar 2011 case, Judge Robinson determined that $125 per hour was a reasonable rate for paralegals in the Kansas City area doing FDCPA litigation.  *See Wilkinson v. I.C. Sys.*, 2011 U.S. Dist. LEXIS 128293, at *6 (D. Kan. 2011).  As such, the court finds that 12.4 hours will be billed at the $125 hourly rate.

### c.    Non-compensable

The court is also concerned about Waddell's billing to plaintiff costs associated with Waddell's ethics complaint against Klutho to the state bar.  Waddell claims that, "[d]uring this litigation, [he] became aware that Mr. Klutho had been repeatedly using the Kansas bar number of another lawyer on pleadings pending in the United States District Court – District of Kansas." Dkt. 26, at 7.  The following entries appeared on Waddell's time sheets:

February 25, 2014:    Study and analyze Michael Klutho's February 25, 2014 email correspondence regarding his availability for depositions; draft substantive response to same and regarding Mr. Klutho's use of different bar numbers (.90 hours, no charge)

February 26, 2014:    Telephone conference with Kate F. Baird of the Kansas Disciplinary Office regarding Mr. Klutho's complaint regarding my email (.20 hours, $55.00)

March 6, 2014:    Telephone conference with Michael Klutho regarding my bar complaint and threat to report me (.10 hours, $27.50)

Dkt. 36-1, at 34, 36.

In his Reply, Waddell himself admits that "this issue has no relevancy to the fee motion." Dkt. 36, at 7. While Waddell indicated "no charge" for some of his work related to this complaint, he failed to do so for all. It is unclear to the court upon what basis Waddell justifies passing any of this cost along to plaintiff. Therefore, the court deducts .30 hours as non-compensable.

### d.    Excessive Hours

Defendant next alleges that Waddell's time sheets contain multiple instances of duplicative and excessive entries.[2] Upon review, the court does find some of Waddell's entries to be vague and the hours spent excessive, especially for an attorney of Waddell's admitted experience. As noted above, the court may reduce "the reasonable hours awarded if 'the number [of compensable hours] claimed by counsel includes hours that were unnecessary, irrelevant and duplicative." *Caputo v. Prof'l Recovery Servs.*, 2004 U.S. Dist. LEXIS 12478, at *9 (D. Kan.

---

[2] The court acknowledges that "[t]he term 'duplicative' in the context of attorney's fees requests usually refers to situations where more than the necessary number of lawyers are present for a hearing or proceeding or when multiple lawyers do the same task." *Robinson*, 160 F.3d at 1285 n.10. It is clear that plaintiff had only one attorney on this case: Waddell. However, it is clear that defendant uses the term "duplicative" not to refer to identical work done by multiple attorneys but rather to mean "unnecessary" work done by one attorney.

June 9, 2004), *modified* 2004 U.S. Dist. LEXIS 14931 (D. Kan. July 27, 2004) (quoting

*Erickson*, 239 F. Supp. 2d at 1207).

Plaintiff is correct in that this case was active for nearly one year.  However, this time is

somewhat misleading.  Plaintiff retained Waddell on April 11, 2013, but did not file suit against

defendant until July 7, 2013.  The case was removed to this court on August 9, 2013, and settled

on April 2, 2014.  The major events of this case can be summarized as follows:

- April 11, 2013: plaintiff sends defendant a *Nelson v. Miller* letter offering to settle his claims for $5,900.  The offer is rejected

- July 7, 2013: plaintiff files a Petition for Damages in the Johnson County, Kansas District Court

- August 9, 2013: defendant removes the case to the United States District Court for the District of Kansas and files an Answer

- April 2, 2014: plaintiff participates in a deposition (2.2 hours); parties participate in mediation (1.7 hours) and settle case

Simultaneous to these events, the parties conducted minimal discovery which consisted of the

following:

- plaintiff's Opening Interrogatories to defendant (11 questions)
- plaintiff's First Request for Production of Documents to defendant (11 requests)
- plaintiff's Second Request for Production of Documents to defendant (4 requests)
- plaintiff's Rule 26 Initial Disclosures (2 pages)
- defendant's First Set of Interrogatories and Request for Production of Documents to plaintiff (13 questions/18 requests)
- Phone conversation with "Whitney" on May 16, 2014 (6 minutes)

Dkt. 31, at 38-58, 60-66; Dkt. 36-1, at 9-17.   There is also some email and general

correspondence mentioned in the record.

The only motion practice that has taken place in this case is plaintiff's pending motion for

attorney's fees.  The court cannot help but question what Waddell spent 75.20 hours doing in this

matter.  By comparison, in *Wilkinson*, the same case in which Judge Robinson awarded an hourly

rate of $125 for paralegal fees, the Kansas City attorneys submitted a bill in the amount of $18,386. *Wilkinson*, 2011 U.S. Dist. LEXIS 128923, at *13. This was for 63.4 hours of work billed at $290 per hour. *Id*. However, the difference between *Wilkinson* and the case at hand is that *Wilkinson* "settled on the eve of trial, and much of counsel's time was spent on discovery, drafting the pretrial order, preparing for trial, and negotiating the settlement." *Id*. at *12-13. Here, the parties were nowhere close to trial at the time of settlement. Furthermore, discovery in this case was minimal and consisted of the exchange of mostly basic information. Even more telling is the fact that the parties came to a settlement agreement in less than two hours.

While there is no question that Waddell is entitled to be compensated for his time, he is *not* entitled to payment above and beyond the hours that "a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Caputo*, 2004 U.S. Dist. LEXIS 12478, at *10 (quoting *Robinson*, 160 F.3d at 1281). Here, several of Waddell's entries are vague, simply stating "study, analyze and respond to client's inquiry for a status update," without any indication as to what the updates were in reference to. Dkt. 31, at 1-17.

Furthermore, Waddell's records show that he spent 2.1 hours drafting plaintiff's initial and amended Petition for Damages. Dkt. 31, at 2. However, review of similar filings by Waddell indicates that he uses standard boilerplate language for petitions of this sort, such that at least eighty percent of his pleadings are identical. Furthermore, Waddell indicated that he spent more than three hours responding to defendant's discovery requests, a task that produced, based on the evidence in the record, less than twenty pages of actual discovery. Dkt. 31, at 1-17, 60-71. Moreover, Waddell alleges to have spent 16.5 hours on matters concerning this fee petition alone, which is more than twenty percent of his total number of hours spent. As discussed

above, the only reason that the fee petition appears to be so contested is because of Waddell's documented number of hours spent on a case that essentially settled in less than two hours.

In making its determination of Waddell's reasonable number of hours, the court has gone through and identified those documented entries it finds to be excessive, redundant, and vague. After subtracting the 2.90 hours for clerical work, the 12.40 hours more appropriately attributed to paralegal work, and the .30 hours for non-compensable work, 59.60 hours remain.  Based on the court's review of the record, and keeping in mind its role of determining "what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances," the court finds it reasonable to reduce these hours by twenty percent (20%), to 47.68.  *See Caputo*, 2004 U.S. Dist. LEXIS 12478, at *9 (quoting *Robinson*, 160 F.3d at 1281). The court must next determine whether Waddell's hourly rate was reasonable.

### 2.    Reasonable Hourly Rate

"When determining the appropriate rate to apply to the reasonable hours, 'the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation.'"  *United Phosphorus, Ltd.*, 205 F.3d at 1234 (quoting *Case*, 157 F.3d at 1255).  The moving party bears the burden to show that the requested rates are reasonable, that is, they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area."  *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) (internal citations omitted).

Here, Waddell seeks an hourly rate of $275 based on his experience in the area of consumer protection law as well as his previous attorney's fees awards in similar cases. Dkt. 28-1, at 21. Waddell also relies upon the affidavit of Wichita attorney N. Russell Hazlewood ("Hazlewood"), who opined that Waddell's hourly rate was reasonable given his experience, reputation, and the fees charged by other, similar attorneys for comparable work in the Kansas City market. Dkt. 28-1, at 27. In response, defendant sets forth case law from throughout the Tenth Circuit that finds that the prevailing market rate for experienced FDCPA attorneys typically ranges between $200 and $250 per hour. Dkt. 29, at 17-18.[3] What defendant fails to show, however, is any Kansas case where the court found that an award of $275 for FDCPA and KCPA claims was *unreasonable*.

Defendant further argues that this court should not take into account Hazlewood's opinion due to his preexisting business relationship with Waddell. Dkt. 29, at 8 n.2. However, given the extreme detail in which Hazlewood discusses Waddell's fees, as well as the information he includes about other lawyers both in the Wichita and Kansas City communities, the court has no concerns with accepting it as an accurate representation of fees charged in consumer protection cases. Therefore, the court finds that the hourly rate of $275 is reasonable.

Therefore, using the lodestar formula, Waddell's attorney's fees are calculated as follows:

| | |
|---|---|
| Attorney rate hours: | 47.68 x $275 = $13,112.00 |
| Paralegal rate hours: | 12.40 x $125 =   $1,550.00 |
| **Total Attorney Fees:** | **$14,662.00** |

---

[3] *See Person v. NCO Fin. Sys., Inc.*, 2011 U.S. Dist. LEXIS 92704 (D. Kan. Aug. 19, 2011) (finding that the requested hourly rate of $250 was reasonable for FDCPA claims litigated by attorneys in the Kansas City area); *Caputo*, 2004 U.S. Dist. LEXIS 12478 (D. Kan. July 27, 2004) (finding that the requested hourly rate of $175 was reasonable for commercial law claims litigated by attorneys in the Topeka area).

**C.**     **Costs and Fees**

Finally, plaintiff seeks an award of $304.96 in costs and fees.  Dkt. 36-1, 40-41.  The FDCPA grants a successful plaintiff "the costs of the action."  15 U.S.C. § 1692k(a)(3).  The court finds plaintiff's request for costs and fees in the amount of $304.96 to be reasonable.

**IT IS THEREFORE ORDERED** this 29th day of September, 2014, that plaintiff's Motion for an Award of Costs and Attorney's Fees is granted to the extent outlined above, in the amount of $14,966.96.

s/J. Thomas Marten
J. THOMAS MARTEN,
CHIEF JUDGE
